# In the United States Court of Federal Claims

No. 18-458C
(Filed: October 23, 2019)

| | |
|---|---|
| THOMAS E. BAILEY, | Military Pay; Judgment on the Administrative Record; AFBCMR; Burden of Proof; Deference to Medical Advisory Opinions |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

*William E. Cassara,* Evans, GA, for plaintiff.

*Sonia M. Orfield*, Civil Division, United States Department of Justice, Washington, DC, with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Deborah A. Bynum*, Assistant Director, for defendant. *Lt. Col. Kris-Lana Carter*, Air Force Civil Litigation, Joint Base Andrews, MD, of counsel.

## O P I N I O N

**FIRESTONE**, *Senior Judge.*

Pending before the court are the parties' cross motions for judgment on the administrative record in this military pay case filed pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC") and the United States' (the "government") partial motion to dismiss for failure to state a claim under RCFC 12(b)(6). The plaintiff, Mr. Thomas E. Bailey, a former Air Force Lieutenant Colonel, filed his original complaint on March 28, 2018, and an amended complaint on April 10, 2018. Mr. Bailey alleges that the Air Force Board of Corrections for Military Records ("AFBCMR"

or the "Board") failed to follow proper procedures and applied the wrong burden of proof when refusing to grant Mr. Bailey the relief he requested.

For the reasons that follow, the court **GRANTS IN PART AND DENIES IN PART** Mr. Bailey's motion for judgment on the administrative record and **DENIES** the government's motion to dismiss and motion for judgment on the administrative record.

## I.   STATEMENT OF THE FACTS

Mr. Bailey entered the United States Air Force on December 13, 1990. A.R. 225. During the relevant timeframe, Mr. Bailey was a Strategic Communications Planner for Supreme Headquarters Allied Powers, Europe. A.R. 225-26. On September 10, 2011, near Mons, Belgium, Mr. Bailey attended an outdoor festival with his family. A.R. 319-21. During the festival, Mr. Bailey admits to having consumed five alcoholic beverages over a six-hour period. A.R. 321. Thereafter, Mr. Bailey became irritable and admittedly grabbed a technical sergeant around the throat, bit and kicked a corporal, threatened to kill a staff sergeant security forces member, and resisted apprehension by another security forces member. A.R. 243-47. A Belgian Police officer present at the scene considered it possible that environmental or medical issues may better explain Mr. Bailey's behavior. A.R. 722.

### A.   Article 15 Proceeding

Following the September 10, 2011 incident, the Air Force, on October 27, 2011, offered Mr. Bailey the right to have his misconduct addressed in an Article 15 proceeding, pursuant to 10 U.S.C. § 815, rather than through a court-martial proceeding. A.R. 243. Eight days later, Mr. Bailey voluntarily accepted the Article 15 forum and

waived his right to demand a court-martial proceeding. A.R. 243. In the Article 15

charging document, Mr. Bailey was charged with three offenses under the Uniform Code

of Military Justice ("UCMJ") – resisting arrest, assault, and communicating a threat. A.R.

243-47. Brigadier Gen Charles K. Hyde made the Officer Selection Record decision.

In his response to the Article 15 charges, Mr. Bailey stated that his last memory

from September 10, 2011 was of consuming a fifth alcoholic drink called Aquavit. A.R.

321. After consuming the beverage, he felt "suddenly disoriented and very hot." *Id.* Mr.

Bailey also stated that he had been taking "two prescription-level antihistamines daily."

A.R. 323-24. He further indicated that it was hot which may have caused dehydration and

heat stroke. *Id.* Mr. Bailey included a medical opinion from his physician, Lt Col (Dr.)

Marshall Mendenhall. A.R. 326-27, 723. Dr. Mendenhall opined that Mr. Bailey's

misconduct was the result of "two different antihistamines used, dehydration, and alcohol

. . . ." A.R. 723; *see* A.R. 74, 355. Dr. Mendenhall also speculated that long-term

insomnia, sleep deprivation, and associated symptoms and a possible heat-related injury

may have been contributing causes. A.R. 723; *see* A.R. 74, 355. In addition, Mr. Bailey

included the statement of Col Paul Bell, Mr. Bailey's superior officer, who after speaking

with Belgian Federal Police authorities, stated that he "[found] it reasonable to question

whether [Mr. Bailey's] actions that evening were the result of underlying medical issues"

although he did not witness the events or know Mr. Bailey before he was arrested. A.R.

721; *see* A.R. 354-55.

On October 26, 2011, Brig Gen Charles K. Hyde determined in the Article 15

proceeding that Mr. Bailey's irresponsible use of alcohol resulted in him assaulting

several individuals and caused offense to many others. A.R. 247. Brig Gen Hyde stated

that Mr. Bailey's "actions on the night of 10 September 2011 were completely

unacceptable and caused serious discredit upon the United States Air Force and the

officer corps." *Id.* In reaching this conclusion, Brig Gen Hyde stated that he had

considered all eyewitness statements, the oral and written presentations from Mr. Bailey

and the memorandum from Dr. Mendenhall. A.R. 26. He also concluded that the alternate

medical explanations were too remote and not persuasive. *Id.*

Brig Gen Hyde imposed a forfeiture of $4,035 per month for two months and a

reprimand. A.R. 247. The terms of the reprimand stated, in part, that Mr. Bailey elected

not to appeal the Article 15 determination, and the Article 15 determination was placed in

Mr. Bailey's Officer Selection Folder. A.R. 245.

### B.   Removal From Promotion List

Prior to the events of September 10, 2011, Mr. Bailey had qualified for the

Calendar Year 10C ("CY10C") Colonel Line Central Selection Board and had been

selected for promotion. A.R. 72-73. The Third Air Force Commander, Lt Gen Frank

Gorenc, was tasked with reviewing the decision to place the Article 15 decision in Mr.

Bailey's Officer Selection Folder. A.R. 184. Lt Gen Gorenc concluded that Mr. Bailey

"knew he was taking prescription medicine and that he made the conscious decision to

consume alcohol while on prescription medicine" and "[t]herefore, he was responsible for

his actions." *Id.* Lt Gen Gorenc accordingly upheld the decision to place the Article 15

decision in Mr. Bailey's Officer Selection Folder. *Id.*

On December 28, 2011, the Air Force initiated action to remove Mr. Bailey's name from the CY10C promotion list due to Mr. Bailey's violations of the UCMJ arising from his actions at the festival. A.R. 72-73. The Secretary of the Air Force approved the removal of his name from the promotion list on April 12, 2012. A.R. 73, 367. Mr. Bailey subsequently received an overall recommendation of "Do Not Promote" on his promotion recommendation form and was passed over for promotion. A.R. 71-72, 346.

### C.      Officer Performance Reports

Following Mr. Bailey's removal from the promotion list, he received several Officer Performance Reports ("OPRs"). Of significance here, on June 29, 2012, Mr. Bailey received an OPR for the reporting period ending January 7, 2012. A.R. 68, 251-52. The OPR was referred to Mr. Bailey for response because of a comment regarding the off-duty incident which had resulted in the Article 15 Nonjudicial Punishment for violations of Articles 95, 128, and 134 of the UCMJ. A.R. 71-72, 345-47. Mr. Bailey responded by challenging the inclusion of the off-duty incident in his OPR; he stated that a military neurologist in the months after the September 10, 2011 incident had diagnosed him with a seizure disorder and had determined that Mr. Bailey's neurological disorder could have caused his behavior at the festival. A.R. 71, 345. The initial rater of his report, an additional rater, and the reviewer/commander considered his response but upheld the OPR. A.R. 71.

### D.      Retirement

Mr. Bailey applied for retirement on February 27, 2013. A.R. 73. The Air Force informed Mr. Bailey that due to the Article 15, the Air Force needed to determine the

appropriate grade for Mr. Bailey's retirement. A.R. 238; *see* A.R. 231-32, 349-50. On November 12, 2013, the Secretary of the Air Force determined that Mr. Bailey had served satisfactorily in the grade of lieutenant colonel (O-5), and Mr. Bailey was permitted to retire on June 1, 2014 in that grade. A.R. 223, 329. He was credited with twenty-three years, five months, and eighteen days of active duty service and given an overall service characterization of "honorable." A.R. 329.

### E.     First AFBCMR Decision

Mr. Bailey initially sought relief from the AFBCMR on January 29, 2013. A.R. 497. Of significance, Mr. Bailey requested that the Article 15 action be reversed, the January 7, 2012 OPR be voided, and the decision to not promote him be reversed. *Id.*

At the AFBCMR proceeding, Mr. Bailey presented medical evidence that was not available during the Article 15 proceeding. He relied on a doctor's visit on April 22, 2013 to support his contention that the September 10, 2011 incident was the consequence of a seizure. *See* A.R 477. Mr. Bailey was seen by a Dr. Mark Fishel. A.R. 102-03. Dr. Fishel diagnosed Mr. Bailey with "transient alteration of awareness," a seizure disorder. A.R. 356. Dr. Fishel opined that it was a "reasonable conclusion" that a complex seizure could explain Mr. Bailey's behavior on September 10, 2011. A.R. 74-75, 77 102, 356. Dr. Fishel noted that he found no evidence of an abnormal EEG or brain MRI after testing Mr. Bailey. A.R. 102-03. Nonetheless, Dr. Fishel prescribed Mr. Bailey an anticonvulsant as a prophylactic measure. *Id.* Mr. Bailey also presented evidence that the Department of Veterans Affairs awarded him a service connection disability rating for seizures. A.R. 75, 95.

The AFBCMR denied Mr. Bailey's request on July 15, 2014. A.R. 465. The AFBCMR held that "there was insufficient evidence of an error or injustice to warrant corrective action." A.R. 465, 485.

### F.     Second AFBCMR Decision

On August 22, 2014, Mr. Bailey submitted a request for correction of military record which the AFBCMR treated as a request for reconsideration that did not meet the necessary criteria for reconsideration. A.R. 492. However, the AFBCMR discovered that Mr. Bailey had not received and was, therefore, not able to comment on one of the six advisory opinions the AFBCMR sought from Air Force experts and relied on for the first AFBCMR decision. On December 16, 2014, the Executive Director of the AFBCMR wrote a letter to Mr. Bailey which stated that "an error did occur by not providing you a copy of the . . . advisory [opinions] for your review and comment as requested." A.R. 412. Thus, Mr. Bailey's case was reopened, and Mr. Bailey was given thirty days to submit comments. *Id.* Following receipt of his comments, a different panel of the AFBCMR was convened to consider his comments but on June 9, 2015 found that "there is insufficient evidence to warrant corrective action." A.R. 389-91. The AFBCMR found that "it was more likely than not[] that the applicant's alcohol intake was a major contributing factor to his actions." A.R. 390.

### G.     Third AFBCMR Decision

Subsequently, Mr. Bailey alleged that the AFBCMR had erred again, arguing among other things that the panel did not consider several filings he had made before issuing its decision. A.R. 372-79. The Executive Director of the AFBCMR wrote Mr.

Bailey a letter stating that he would be granted another opportunity to apply for

AFBCMR consideration due to the "administrative errors that took place during the

processing of [his] case." A.R. 370. The Executive Director stated that Mr. Bailey

"should be provided an opportunity to re-apply to the AFBCMR where [Mr. Bailey's]

case will be prepared for consideration by a new AFBCMR panel." *Id.*. Additionally, the

Executive Director stated "[t]o preclude the possibility that the new panel could be

prejudiced by the original panel's decision in your case," Mr. Bailey should submit new

forms for relief. A.R. 370. The Executive Director indicated that he was "going to great

lengths to ensure that [Mr. Bailey's] case is afforded a clean review by a new panel."

A.R. 370.

Mr. Bailey submitted two new requests for relief to the AFBCMR on December 1,

2015, again seeking removal of the Article 15 and requesting that he be promoted

retroactively and given back pay. A.R. 83, 167. Because "the requests for removal of the

Article 15 and promotion propriety overlap and correspond to the same [September 10,

2011] event," the AFBCMR combined the two requests into a single case file. A.R. 69.

In his requests, Mr. Bailey asserted that he was with his wife at the September 10,

2011 festival. A.R. 105. He recalled being offered a bag of ice because his face had

turned red, which he asserted was a sign of a seizure. *Id.* He recalled being hot and

feeling disoriented after consuming a small amount of alcohol and then claimed to have

no memory of the events that next transpired. A.R. 106. After he was offered the bag of

ice, his wife asked someone to watch him while she left to find a friend to see if the

friend needed a ride. *Id.* Mr. Bailey provided numerous references to literature on

seizures to show that his symptoms were consistent with seizures. *Id.* Mr. Bailey stated that witnesses described dramatic changes in his facial expressions and mood, going from combative – grabbing and hitting two individuals – to asking witnesses for help and speaking gibberish. A.R. 108-09. Mr. Bailey asserted that his behavior was the result of a complex partial seizure and not alcohol intoxication. A.R. 109-17.

On June 1, 2017, the AFBCMR considered Mr. Bailey's requests to remove the Article 15 from his record, void the promotion propriety action removing his name from the colonels' promotion list, retroactively promote him to the grade of colonel, and award him back pay with interest. A.R. 80. In considering Mr. Bailey's request, the AFBCMR sought input from the Air Force Legal Operations Agency, Military Justice Division, various sections of the Air Force Personnel Command, a medical opinion from Dr. Horace Carson, and a psychiatric opinion from Dr. Natalya Chernyak. A.R. 81, 336-67. The AFBCMR considered a total of eight advisory opinions, two of which – Dr. Carson's and Dr. Chernyak's – recommended granting the requested relief. A.R. 358, 367.[1]

Dr. Carson recommended that the AFBCMR consider granting Mr. Bailey's requested relief. A.R. 74-75, 353-58. Dr. Carson found it significant that Mr. Bailey had, prior to the September 10, 2011 incident, reported symptoms including anxiety, "spells,"

---

[1] Five of the remaining advisory opinions recommended denying the relief sought, and one offered no opinion as it was for information only. A.R. 339, 343, 346, 350-51, 361, 364. Of particular note, the Air Force Legal Operations Agency considered the fact that Mr. Bailey's treating neurologist concluded that a complex seizure was a "reasonable possibility" to explain Mr. Bailey's behavior. A.R. 338. However, the opinion did not consider the medical evaluations by Dr. Carson or Dr. Chernyak. Based on the evidence available at the time, the opinion ultimately found that the original nonjudicial punishment should not be overturned.  A.R. 339.

and difficulty finding words when talking to groups of people. A.R. 75, 354, 357. This, in combination with Mr. Bailey's subsequent diagnosis of a seizure disorder by the Department of Veterans Affairs and the precautionary treatment by Dr. Fishel, led Dr. Carson to recommend favorably considering Mr. Bailey's petition. A.R. 357-58. Dr. Carson wrote that he previously opined that Mr. Bailey's "behavior could be solely attributed to simple alcohol intoxication." A.R. 357. However, because of the evidence Mr. Bailey "presented from a reputable Epilepsy authority, the poorly defined symptoms he reported prior to September 2011, coupled with the reality that he has since been formally diagnosed with and treated for a seizure disorder" (footnote omitted), Dr. Carson decided to change his opinion to recommend that the Air Force "favorably reconsider[ed Mr. Bailey's] petition for establishing a causal relationship between his actions and a medical condition." A.R. 357.

Dr. Carson acknowledged that it was not possible to eliminate overindulgence in alcohol as a contributing cause of his behavior in 2011 because "[u]nfortunately, there was no opportunity to conduct a critical objective clinical assessment [of Mr. Bailey] at the time, such as breathalyzer test, blood alcohol level, drug screening, or a urinalysis for evidence of rhabdomyolysis from heat illness . . . ." A.R. 75, 357. Dr. Carson thus recommended that a mental health professional review Mr. Bailey's records to provide an opinion as to whether his behavior on the night in question could have been caused solely by intoxication.  A.R. 358.

Dr. Chernyak provided the mental health opinion. She opined that there was enough evidence to support the requested changes in Mr. Bailey's record. A.R. 366-67.

According to Dr. Chernyak, Dr. Fishel arrived at a reasonable conclusion in finding that Mr. Bailey's abnormal behavior could be a result of a complex seizure. A.R. 77, 367. In Dr. Chernyak's opinion, Mr. Bailey's behavior at the festival was not consistent with an intoxicated individual, was not consistent with Mr. Bailey's description of how much he had to drink, and was not consistent with Mr. Bailey's prior, clean disciplinary history. A.R. 77, 367. Dr. Chernyak stated that "it is highly unlikely that [Mr. Bailey's] blood alcohol level was tremendously elevated after 5 drinks consumed in 6 hours." A.R. 367. Thus, she found it unlikely that his behavior was caused by alcohol abuse. She also opined that it is unlikely that his behavior was caused by "mind-altering substances" or drug abuse. *Id.*

Thus, Dr. Chernyak concluded based on the evidence presented that a medical condition best explained Mr. Bailey's behavior. *Id.* Dr. Chernyak found a medical condition reasonable based on subsequent medical evidence. In addition, according to Dr. Chernyak, diagnosing a seizure disorder is challenging and a negative EEG and MRI would not fully exclude a seizure disorder. A.R. 77, 367. Dr. Chernyak found it significant that prior to September 10, 2011 Mr. Bailey reported experiencing "spells," anxiety, difficulty finding words while talking to a group of people, and possible panic attacks. A.R. 77, 367. Finally, Dr. Chernyak found it significant that Mr. Bailey reported his seizure episodes had resolved after beginning antiepileptic medication. A.R. 77, 367. For these reasons, Dr. Chernyak recommended granting Mr. Bailey relief and that the facts allowed for "the possibility that an unknown medical condition could explain" Mr. Bailey's behavior on September 10, 2011. A.R. 77, 367.

After considering the evidence presented, the AFBCMR denied Mr. Bailey's request. A.R. 80. The AFBCMR stated that "[i]nsufficient relevant evidence has been presented to demonstrate the existence of an error or injustice to warrant granting any of the requested relief." A.R. 78. The AFBCMR further stated that "it is our determination the evidence does not clearly demonstrate it was a seizure or a medical condition which caused [Mr. Bailey's] misconduct on 10 September 2011." *Id.* While the AFBCMR acknowledged that Dr. Chernyak concluded that Mr. Bailey "was likely not overly intoxicated after consuming five alcoholic drinks," the AFBCMR relied on the fact that "there was not a determination to [Mr. Bailey's] level of intoxication" as a grounds to reject Dr. Chernyak's conclusion. A.R. 78-79.

The AFBCMR also found no evidence of error or an injustice in the processing of the Article 15 and that Mr. Bailey was afforded all the requisite due process rights in the Article 15 proceeding. The AFBCMR specifically considered Mr. Bailey's contention that the standard of proof for an Article 15 is proof beyond a reasonable doubt. A.R. 79, 336-39. The initiating commander's decision, the AFBCMR determined, was based on the evidence presented and the punishment was within the limits of his authority. A.R. 69, 79, 337-39. Furthermore, the AFBCMR noted that Mr. Bailey was aware of his right to demand trial by court-martial where the standard of proof would be proof beyond a reasonable doubt but had declined that opportunity. A.R. 79. For these reasons, the AFBCMR concluded that Mr. Bailey failed to sustain his burden of establishing error or injustice to warrant removal of his Article 15 and denied his request. A.R. 79-80.

The AFBCMR also stated in connection with Mr. Bailey's requested "removal of his referral OPRs" that the "OPR for the period ending 7 January 2012 was result of his misconduct on 10 September 2011 and Article 15." A.R. 80. Because the AFBCMR found "no reason to remove the Article 15" it found "the OPR correct and accurate as written." *Id.*

Finally, with respect to the promotion propriety action, the AFBCMR found that Mr. Bailey's commander had sufficient grounds to remove Mr. Bailey's name from the CY10C promotion list. A.R. 79. The AFBMCR determined that Mr. Bailey's actions on September 10, 2011 demonstrated an inability to satisfactorily serve as a colonel. A.R. 79-80. Accordingly, the AFBCMR denied Mr. Bailey's requested relief.

## H.    Fourth AFBCMR Decision

After issuing its third decision, the AFBCMR learned of another error in the review of Mr. Bailey's request. Although Mr. Bailey had submitted a rebuttal response to the various advisory opinions sought by the AFBCMR on May 8, 2017, A.R. 8, 13-18, 21-62, the AFBCMR had not received Mr. Bailey's response until August 24, 2017, after it had issued its June 1, 2017 decision. A.R. 8. In his rebuttal to those advisory opinions, Mr. Bailey asserted that his behavior was erratic and inconsistent with intoxication and that the AFBCMR should follow the recommendations of Dr. Carson and Dr. Chernyak. A.R. 13, 21-23, 31-33. Mr. Bailey also claimed that the subject matter experts who had offered advisory opinions were influenced by the AFLOA/JAJM opinion recommending denial of relief that he alleged were based on the wrong standard of proof. A.R. 21. Additionally, he contended that the advisory opinions were prejudicial because they did

13

not seek or review the medical opinions in this case. A.R. 22. Upon receiving Mr.

Bailey's rebuttal response, the AFBMCR, sua sponte, elected to reconsider its June 1,

2017 decision considering Mr. Bailey's rebuttal response. A.R. 10.

On March 14, 2018, the AFBCMR issued its reconsideration decision. A.R. 7-8,

10-11. The AFBCMR addressed Mr. Bailey's rebuttal but decided not to reverse its June

2017 decision. *Id.* The AFBCMR found "no evidence of an error or injustice in the

processing of [Mr. Bailey's] [Article 15 action] or promotion propriety to warrant

granting the requested relief . . . ." A.R. 10. The AFBCMR stated that it found "the

applicant has provided no new relevant evidence to warrant granting the requested

relief." *Id.* The AFBCMR further stated "other than his own uncorroborated assertions,

we find no evidence" that the AFLOA/JAJM evaluation unfairly influenced the subject

matter experts in Mr. Bailey's case. *Id.*

Regarding Dr. Carson's and Dr. Chernyak's conclusions that "a seizure disorder

could have attributed [sic] to his behavior," the AFBCMR stated that Dr. Carson and Dr.

Chernyak "do not conclusively state it was a seizure which caused his misconduct and

that it was likely the result of multiple factors." A.R. 10. The AFBCMR did not "find the

evidence provided by [Mr. Bailey] persuasive to conclude his misconduct was caused by

a medical condition." *Id.* The AFBCMR also stated that Mr. Bailey's other evidence was

not sufficient to persuade the AFBCMR "to conclude his conduct was caused by a

medical condition." *Id.* The AFBCMR panel concluded that Mr. Bailey "displayed poor

judgment when he chose to combine alcohol with prescribed medication" and therefore

affirmed its June 1, 2017 decision to deny Mr. Bailey's request. *Id.*

## II.   PROCEDURAL BACKGROUND

On March 28, 2018, Mr. Bailey filed this complaint and then an amended complaint on April 10, 2018. Mr. Bailey brings three types of claims. First, according to Mr. Bailey, the AFBCMR made two procedural errors in "failing to incorporate [Mr. Bailey's] response to the advisory opinions into [the AFBCMR's] decision" and "in 2018 reconsidering [Mr. Bailey's] petition while using the decision of the 201[7] Board." Amend. Compl. ¶ 27-28. Second, Mr. Bailey alleges that the incorrect burden of proof was applied in both the Article 15 and the AFBCMR proceeding. Amend. Compl. ¶ 30. Third, Mr. Bailey alleges that the AFBCMR decision was arbitrary and capricious because the AFBCMR's medical and psychiatric consultants recommended granting his requested relief, and the AFBCMR failed to give those opinions proper deference. Amend Compl. at ¶¶ 21, 26, 29, 35.

On April 3, 2019, after reviewing the parties' cross motions for judgment on the administrative record, the court issued an order seeking supplemental briefing on three issues: 1. The authority of the AFBCMR to sua sponte reconsider its earlier decision; 2. The deference owed to advisory medical opinions; and 3. The status of Mr. Bailey's April 18, 2018 protest before the AFBCMR's Executive Director. (ECF No. 22). Oral argument was heard on September 18, 2019.

## III.   STANDARD OF REVIEW

The standard of review for an RCFC 52.1 motion for judgment upon the administrative record depends on the specific law to be applied in the specific case. *See* 2006 Rules Committee Note to RCFC 52.1; *Rominger v. United States*, 72 Fed. Cl. 268,

272 (2006). Review of AFBCMR decisions is governed by the standards for reviewing a decision of a military correction board. Once a plaintiff seeks relief from a military corrections board, the plaintiff must demonstrate that the board's decision was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010).

This standard of review "does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Stein v. United States*, 121 Fed. Cl. 248, 267 (2015) (quoting *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983) (emphasis in original)). When substantial evidence supports a board's action, and that action is reasonable given the evidence presented, the court will not disturb the result because it does not sit as a "super correction board." *Van Cleave v. United States*, 70 Fed. Cl. 674, 678-79 (2006) (internal quotation marks and citation omitted).  There is a "strong, but rebuttable, presumption" that the military discharges its duties "correctly, lawfully, and in good faith." *Bernard v. United States*, 59 Fed. Cl. 497, 501 (2004) (quoting *Hary v. United States*, 223 Ct. Cl. 10, 17 (1980)); *Myers v. United States*, 50 Fed. Cl. 675, 689 (2001). Questions of fact must be resolved by reference to the administrative record. *Bannum Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005).

## IV.     DISCUSSION

### A.      Mr. Bailey's Procedural Challenges To The Board's Decisions Are Without Merit

As discussed in detail above, this case has a somewhat tortured procedural history and it is against this backdrop that the court considers Mr. Bailey's allegation that the AFBCMR committed two procedural errors in considering his petition for relief. First, Mr. Bailey claims that the AFBCMR erred "in 201[7] in failing to incorporate [his] response to the advisory opinions into their decision." Amend. Compl. ¶ 27. Second, Mr. Bailey alleges that the "actions of the AFBCMR in 2018 in reconsidering [his] petition while using the decision of the 201[7] Board was contrary to law." *Id.* ¶ 28. Mr. Bailey argues that the AFBCMR should have assigned his application to another new panel. A.R. 8. The government responds that even if the AFBCMR erred in 2017 by failing to incorporate Mr. Bailey's response to the advisory opinions, the AFBCMR properly corrected that error by sua sponte reconsidering the petition in 2018 with Mr. Bailey's response. Thus, the question before the court is whether the AFBCMR's actions violated the statutory or regulatory procedures regarding corrections of military records.

Under 10 U.S.C. § 1552(a)(1), "[t]he Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." The Secretary must also establish procedures for making such corrections. *Id.* § 1552(a)(3)(A). These procedures must permit reconsideration "of a determination of a board under this section, no matter when filed, . . . if supported by materials not previously . . . considered by the board in making such determination." *Id.* § 1552(a)(3)(D).

The Secretary of the Air Force established the AFBCMR pursuant to the terms of Section 1552 for the express purpose of correcting military records. *See* 32 C.F.R.

§ 865.0. The regulations governing the AFBCMR are found at 32 C.F.R. §§ 865, *et. seq*,

and Air Force Instruction ("AFI"), *Air Force Board of Corrections of Military Records*

*(AFBCMR)*, 36-2603. The AFBCMR "considers all individual applications properly

brought before it" and "[i]n appropriate cases, it directs correction of military records to

remove an error or injustice, or recommends such correction." 32 C.F.R § 865.2(a); AFI

36-2603, ¶ 2.1. An applicant must submit his or her application within three years after

the error or injustice was discovered or should have been discovered; however, the board

may excuse an untimely filing in the interests of justice. 32 C.F.R. § 865.3(f); AFI 36-

2603, ¶ 3.5. The only requirements imposed by regulation on the composition of the

AFBCMR is that there are at least three voting members and that all members are

civilians. 32 C.F.R. §§ 865.1, 865.4(c).

In an action before the AFBCMR, the burden is on the applicant to establish by a

preponderance of the evidence the existence of an error or injustice. 32 C.F.R. § 865.4(a);

AFI 36-2603, ¶ 4.1. The AFBCMR may solicit advisory opinions from Air Force

organizations or officials in considering a petition. 32 C.F.R. § 865.4(a)(1). Applicants

must be given an opportunity to review and comment on any advisory opinions or

additional information obtained by the AFBCMR. *Id.* § 865.4(b); AFI 36-2603, ¶ 4.3.

Applicants are given no more than 30 days to review and respond to such advisory

opinions and requests for extension of the 30-day period will not be granted. AFI 36-

2603, ¶ 4.3.1-3.2. The regulations provide that an application will be processed at the end

of the 30-day period or upon receipt of the applicant's rebuttal, whichever occurs first. *Id.*

¶ 4.3.1. Any finding of material error or injustice by the AFBCMR must be reduced to

writing along with any corrections needed to grant relief. 32 C.F.R. § 865.4(h)(4); AFI 36-2603, ¶ 4.10.2.

The AFBCMR is authorized to reconsider an application if the applicant submits newly discovered relevant evidence that was not reasonably available when the application was previously considered. 32 C.F.R. § 865.6(a); AFI 36-2603, ¶ 6; *see King v. United States*, 65 Fed. Cl. 385, 398 (2005) (concluding that AFBCMR may only reconsider its decision for newly submitted relevant evidence or on the ground of fraud). If the request contains new evidence, the Executive Director of the AFBCMR is required to refer the new evidence to a panel of the board for a decision. 32 C.F.R. § 865.6(b). The AFBCMR panel is then tasked with deciding the relevance and weight of the new evidence, whether it was reasonably available to the applicant when the application was previously considered, and whether it was submitted in a timely manner. *Id.* The AFBCMR may deny reconsideration if the request does not meet the criteria for reconsideration; otherwise the AFBCMR will reconsider the application and decide the case on timeliness or the merits. *Id.*; AFI 36-2603, ¶ 6.2.

Mr. Bailey alleges the AFBCMR's errors in 2017 stem from its failure to follow proper procedures in 2015. Amend. Compl. ¶ 27. As discussed above, the AFBCMR sent Mr. Bailey a letter in October 2015 authorizing him to reapply for relief so that it could correct the administrative errors in processing his case. Amend. Compl. ¶ 17. Thereafter, Mr. Bailey was able to submit an additional petition and that petition was ruled on by a new panel in June 2017. Thus, the procedural error in the 2015 AFBCMR decision was addressed by the 2017 decision.

Regarding Mr. Bailey's assertion that the AFBCMR failed to consider his May 8, 2017 rebuttal response to the advisory opinions, the record demonstrates that the AFBCMR addressed this error by sua sponte reconsidering the 2017 decision along with Mr. Bailey's May 8, 2017 rebuttal response. This procedural challenge therefore fails. Likewise, Mr. Bailey's challenge regarding the AFBMCR's failure to assign reconsideration of the 2017 decision to a different panel in 2018 lacks merit. Recognizing that it had failed to consider his rebuttal response, the AFBMCR in 2018, in accordance with AFI 36-2603 ¶ 6, decided that reconsideration was warranted in order to consider Mr. Bailey's late-found responses. A.R. 8, 10; *see* 32 C.F.R. § 865.6. There is nothing in the Air Force regulations that requires assignment of a request for reconsideration to a new panel. Moreover, nothing in the record suggests that the AFBCMR panel was biased or could not fairly consider Mr. Bailey's response. Indeed, the law presumes that members of AFBCMR panels, like other public officers, discharge their duties correctly, lawfully, and in good faith. *Myers*, 50 Fed. Cl. at 689 (stating that plaintiff in challenging a military correction board decision must overcome the strong but rebuttable presumption that administrators of the military discharge their duties correctly, lawfully, and in good faith). For these reasons, Mr. Bailey's procedural claims fail regarding the AFBCMR's consideration of his rebuttal response in 2017.

### B.   Mr. Bailey's Challenge To The Article 15 Proceeding's Evidentiary Burden Of Proof Is Without Merit

Mr. Bailey next argues that the Air Force improperly applied a preponderance of the evidence standard at his Article 15 nonjudicial punishment proceeding. Amend.

Compl. ¶ 30. Mr. Bailey alleges that the application of the preponderance of the evidence standard at his Article 15 nonjudicial punishment proceedings was arbitrary. Amend. Compl. ¶ 30. The government responds that, because there is no specified evidentiary standard for an Article 15 proceeding, Mr. Bailey's claim fails. Def.'s Mot. for J. on the Admin. R. at 18 (ECF No. 16). The Air Force regulation governing Article 15 proceedings, the government points out, explicitly states that "no specific standard of proof applies to [Article 15] proceedings" but states "commanders should recognize that a member is entitled to demand trial by court-martial, in which case proof beyond a reasonable doubt of each element of every offense by legal and competent evidence is a prerequisite to conviction" and "[i]f such proof is lacking, [Article 15] action is usually not advisable." AFI  51-202 ¶ 3.4.[2]

Mr. Bailey concedes that the Air Force has not specified a standard of proof for an Article 15 hearing. Amend. Compl. ¶ 30. Because there is no specified standard of proof, the court agrees with the government that Mr. Bailey's claim that the Air Force was required to apply a particular standard is incorrect. Therefore, Mr. Bailey's challenge to the standard of proof applied in his Article 15 hearing must be rejected.

---

[2] AFI 51-202 is publicly available at https://static.e-publishing.af.mil/production/1/af_ja/publication/afi51-202/afi51-202.pdf. This standard of proof is in contrast to the implementing regulations of other parts of the military, which set a more definitive burden of proof. *See* U.S. Dep't of Army, Reg. 27-10, Legal Services: Military Justice ¶ 3-18.1 (2011) ("Punishment will not be imposed unless the commander is convinced beyond a reasonable doubt that the Soldier committed the offense(s)"); U.S. Dep't of Navy, Navy Jag Manual ¶ 0110(b) (2012) (providing that "the standard of proof by which facts must be established at mast or office hours is a 'preponderance of the evidence,' rather than 'beyond a reasonable doubt' as it is at courts-martial").

### C. The AFBCMR Erroneously Required Mr. Bailey To Prove An Injustice By More Than A Preponderance Of The Evidence

Mr. Bailey argues that the AFBCMR applied the wrong standard when reviewing his petition to reverse his Article 15. Pl.'s Resp. at 19. Before the AFBCMR, Mr. Bailey argued that he is the victim of an injustice because his Article 15 was predicated on a finding that his conduct was within his control, namely "irresponsible drinking," but that new medical evidence from Air Force medical doctors confirms that he has a seizure disorder which better explains his conduct on the date in question. Mr. Bailey accepts that he had the burden to show that his then undiagnosed seizure disorder more likely than not was a cause of his conduct on September 10, 2011 but argues that he did not have to establish that his drinking played no role. Mr. Bailey argues that by requiring him (1) to "clearly demonstrate" that his seizure disorder was the cause of his conduct on September 10, 2011 and (2) to definitively rule out drinking as a contributing factor, the AFBCMR imposed a burden higher than the preponderance of the evidence standard applicable to his claim under the AFI. *See* AFI 36-2603 ¶ 4.1 ("[T]he applicant has the burden of providing sufficient evidence of material error or injustice. The board will recommend relief only when a preponderance (more likely than not) of evidence substantiates that the applicant was a victim of an error or injustice.").[3]

_____

[3] The court notes that the AFI do not indicate the deference due to advisory opinions like the ones obtained in this case. The court could not find any cases where the AFBCMR rejected medical recommendations without competing and contrary medical evidence and neither party was aware of other similar cases. Oral Arg. 14:48:00-14:52:00. However, to the extent Mr. Bailey argues that deference was required because AFI state that "[l]iberal consideration will be given in cases where an applicant has presented evidence of a diagnosis of PTSD, or symptoms

The government agrees with Mr. Bailey's articulation of the burden of proof standard under the AFI. *See* Oral Arg. 14:36:45-14:37:40. Importantly, the government also concedes that Mr. Bailey did not have to prove that alcohol consumption did not play any role in causing his behavior on September 10, 2011. Oral Arg. 14:30:30-14:30:56. The government argues, however, that the AFBCMR's decision relied on the appropriate standard because the medical opinions provided to the AFBMCR did not state that a seizure disorder or medical condition "caused" Mr. Bailey's behavior on September 10, 2011. Rather, the medical opinions state only that Mr. Bailey's then undiagnosed seizure disorder "could" have been a cause of his behavior on September 10, 2011. Oral Arg. 14:37:40-14:40:00. Because no medical tests were performed at the time of the incident, the government argues, Mr. Bailey did not prove that his undiagnosed seizure disorder was the cause of the behavior that led to the Article 15 and thus the AFBMCR rationally concluded that the Article 15 finding of "irresponsible drinking" should stand.

There is no dispute that Mr. Bailey was required to prove by a preponderance of the evidence that there was a material error or injustice in his Article 15 determination under AFI 36-2603 ¶ 4.1 and that under that standard he had to establish that it was more likely than not that Mr. Bailey was a victim of an injustice. The court finds, however, that the AFBCMR failed to apply this standard in determining that there was no injustice in Mr. Bailey's Article 15. As Mr. Bailey argues, the AFBCMR stated that Mr. Bailey failed

---

resembling PTSD," AFI 36-2603 ¶ 4.8, this provision is not implicated here because Mr. Bailey does not claim that he suffers from PTSD. *See* Oral Arg. 14:18:30-14:18:42.

to meet his burden because "the evidence does not *clearly demonstrate* it was a seizure or a medical condition which caused the applicant's misconduct on 10 September 2011." Pl.'s Resp. at 19 (citing A.R. 78) (emphasis added). The AFBCMR rejected the medical opinions it sought and which both recommended that Mr. Bailey be granted relief because "they do not *conclusively* state it was a seizure which caused his misconduct." A.R. at 10 (emphasis added); *see also id.* (finding that Mr. Bailey did not provide evidence enough "to conclude his conduct *was caused* by a medical condition") (emphasis added).

Under the preponderance of the evidence standard, Mr. Bailey was not, however, required prove to a medical certainty that he had a seizure or that his drinking played no role in his conduct on September 10, 2011. Rather, he had to establish based on the evidence now available that his behavior was more likely than not caused by a seizure and was not consistent with "irresponsible drinking," as stated in the Article 15.  The fact that the AFBCMR's medical advisors could not make a definitive finding of causation because medical testing was not performed, is not fatal to his claim as the government argues. Importantly, both medical advisors recommend granting Mr. Bailey relief. In this connection, the AFBCMR failed to address Dr. Chernyak's express conclusion that Mr. Bailey's behavior was (1) inconsistent with the behavior of an intoxicated individual, (2) inconsistent with someone having five drinks over the course of a day, but (3) consistent with a medical condition. A.R. 366-67.

By holding Mr. Bailey to a standard of "clear" evidence and requiring him to prove a seizure was the sole cause of his actions on the date in question, the AFBCMR

required Mr. Bailey to meet a higher standard than the preponderance of the evidence or the "more likely than not" standard which the government concedes applies.  For this reason, the court must remand the case back to the AFBCMR for reconsideration of Mr. Bailey's claim for relief. On remand, the AFBCMR must address whether Mr. Bailey has shown that his Article 15 was the result of an injustice because his behavior on September 10, 2011 was at least in part more likely than not beyond his control due to a then undiagnosed medical condition rather than solely due to "irresponsible drinking." The AFBCMR will have to decide how much weight to give Dr. Chernyak's uncontroverted medical opinion that Mr. Bailey's blood alcohol level was not likely elevated, that his behavior was not consistent with that of an intoxicated individual, but instead better explained by his then undiagnosed medical condition. The AFBCMR will also have to determine what weight to give to Dr. Carson's conclusion that without contemporaneous medical tests he could only conclude that a seizure "could" have caused his behavior, and on that basis recommended granting Mr. Bailey's relief.  *See* A.R. 357-58.

## CONCLUSION

For the forgoing reasons, the government's partial motion to dismiss and motion for judgment on the administrative record is **DENIED**. Mr. Bailey's cross motion for judgment on the administrative record is **GRANTED IN PART AND DENIED IN PART.** The case is **REMANDED** for six months to the AFBCMR for further review consistent with this decision. A status report shall be filed every 90 days informing the court of the status of the AFBCMR's review. *See* RCFC 52.2(b)(1)(D).

The Clerk of the court is directed to serve a certified copy of this order to the AFBCMR at 1500 West Perimeter Road, Join Base Andrews NAF Washington, MD 20762-7002. *See* RCFC 52.2(b)(2).

**IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge