# In the United States Court of Federal Claims

No. 18-458C
(Filed: September 1, 2020)

| | |
|---|---|
| THOMAS E. BAILEY, ) | Military Pay; Judgment on the |
| ) | Administrative Record; AFBCMR; |
| Plaintiff, ) | Burden of Proof; Deference to Medical |
| ) | Advisory Opinions; Motion to |
| v. ) | Supplement the Administrative Record; |
| ) | Post-Remand |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

*William E. Cassara,* Evans, GA, for plaintiff.

*Sonia M. Orfield,* Civil Division, United States Department of Justice, Washington, DC, with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Deborah A. Bynum*, Assistant Director, for defendant. *Major Todd Swensen* and *Captain Micah S. Pischnotte*, Air Force Civil Litigation, Joint Base Andrews, MD, of counsel.

# **O P I N I O N**

**FIRESTONE**, *Senior Judge*.

Pending before the court in this military pay case are the parties' cross motions for judgment on the administrative record filed pursuant to Rule 52 of the Rules of the United States Court of Federal Claims ("RCFC") and the plaintiff Mr. Thomas E. Bailey's motion to supplement the administrative record following a remand to the Air Force Board of Corrections for Military Records ("AFBCMR" or "Board"). *See Bailey v. United States*, 145 Fed. Cl. 453 (2019).

The court had remanded the matter to the Board on October 23, 2019 after finding that the Board, in deciding not to reverse the Article 15 determination which ended Mr. Bailey's Air Force career, had held Mr. Bailey to a higher standard of proof than required by law and had also failed to adequately address medical evidence that had been presented. *Bailey*, 145 Fed. Cl. at 464. Specifically, the court determined that by requiring Mr. Bailey to "clearly demonstrate" a seizure or medical condition led Mr. Bailey to assault certain individuals and failing to explain why the Air Force's medical advisory opinions were rejected, the Board had required Mr. Bailey to prove the existence of a material error or injustice in his Article 15 determination by more than a preponderance of evidence, contrary to law. *Id.* at 463.

On remand, the Board re-examined the evidence and concluded that Mr. Bailey had failed to provide sufficient evidence to demonstrate the existence of a material error or injustice by a preponderance of evidence. In reaching this conclusion, the Board explained why the medical opinions presented by Air Force doctors did not establish that a medical condition diagnosed more than a year after the assault at issue was the cause of Mr. Bailey's actions. The Board thus concluded that Mr. Bailey had failed to meet the preponderance of evidence standard for reversing the Article 15 determination.

Mr. Bailey now argues that the Board's decision following remand is arbitrary, capricious, unsupported by substantial evidence, and contrary to law for two reasons. First, Mr. Bailey argues that the Board failed to properly address the court's remand order by again rejecting medical opinions and, in doing so, improperly required Mr. Bailey to show with certainty that there is a material error or injustice in his Article 15

determination. Second, Mr. Bailey argues that the Board mischaracterized evidence regarding the role weather played on the day of the incident.

Mr. Bailey has also filed a motion to supplement the administrative record with a complaint filed by Mr. Bailey with the Air Force Inspector General ("IG") in 2015.[1] This complaint alleges that the Board, in a 2015 decision, mischaracterized the content of a doctor's note to improperly assert that Mr. Bailey was unaware of how much alcohol he consumed on the day of the incident because it was hot that day. Mr. Bailey argues that supplementing the record with this complaint is necessary to show a pattern of mischaracterizing the evidence regarding the outside temperature on the day of the incident or to show repeated unfairness because a Board member for the 2015 decision was also on the Board for the decision following remand.

The defendant United States (the "government") has cross moved for summary judgment. The government argues that the Board applied the correct evidentiary standard on remand and properly weighed the medical experts' opinions. The government further argues that the remand decision properly considers the potential role of heat on the day of the incident and is supported by the administrative record. Because there is no mischaracterization of evidence and Mr. Bailey has not alleged a violation of law

---

[1] Neither the Administrative Record nor Mr. Bailey's motion to supplement the administrative record indicate the result of Mr. Bailey's IG complaint. However, as discussed in its prior opinion, the Executive Director of the AFBCMR permitted Mr. Bailey to reapply for new consideration following the 2015 decision due to the various administrative errors. *See Bailey*, 145 Fed. Cl. at 457. The medical advisory opinions at issue here were submitted following Mr. Bailey's reapplication. *Id.* at 457-58.

regarding the composition of the Board following remand, the government opposes Mr. Bailey's motion to supplement the record with his IG complaint.

For the reasons that follow, the court **GRANTS** the government's cross motion for judgment on the administrative record (ECF No. 40) and **DENIES** Mr. Bailey's combined motion for judgment on the administrative record and his motion to supplement the administrative record (ECF No. 39).

## I. FACTUAL AND PROCEDURAL BACKGROUND

The AFBCMR has now issued five opinions in connection with Mr. Bailey's requests for relief. The court's prior opinion sets forth in detail the factual background of Mr. Bailey's complaint and the prior four AFBCMR decisions. *See Bailey*, 145 Fed. Cl. at 454-60. For the purposes of ruling on the pending motions, the following facts are relevant.

On September 10, 2011, Mr. Bailey attended an outdoor festival in Belgium while he was a Strategic Communications Planner for Supreme Headquarters Allied Powers in Europe. Administrative Record ("A.R.") 321. Mr. Bailey admits that at that time, he was taking two prescription-level antihistamines daily. A.R. 323-24. Mr. Bailey further admits to having consumed five alcoholic beverages over a six-hour period at the event. A.R. 321. Mr. Bailey indicated that after consuming the fifth beverage, he felt disoriented and "very hot." A.R. 323-24. Thereafter, the record indicates that Mr. Bailey attacked a technical sergeant, threatened a staff sergeant security forces member, and resisted apprehension. A.R. 243-47.

Mr. Bailey's conduct on September 10, 2011 was addressed through an Article 15 proceeding pursuant to 10 U.S.C. § 815. A.R. 243. Brig Gen Charles K. Hyde decided in the Article 15 proceeding to reprimand Mr. Bailey because his "irresponsible use of alcohol ultimately resulted in [Mr. Bailey's] assaulting of several individuals and most certainly caused offense to many others." A.R. 247.

As detailed in the court's prior opinion, Mr. Bailey challenged the Article 15 determination before the AFBCMR. *See Bailey*, 145 Fed. Cl. at 456-60. In its first decision, the Board denied Mr. Bailey's request to reverse the Article 15 determination. *Id.* at 456. However, the Board failed to provide Mr. Bailey a copy of the initial advisory opinions and reconsidered Mr. Bailey's request. *Id.* In its second decision, the Board provided Mr. Bailey a copy of these advisory opinions and again denied Mr. Bailey's request. *Id.* at 456-57. In its second decision, the Board failed to consider Mr. Bailey's responses to the advisory opinions. *Id.* at 457.

Due to the numerous administrative errors, the Executive Director of the Board permitted Mr. Bailey to reapply to the Board for relief for consideration by a new panel. *Id.* After Mr. Bailey challenged the Article 15 determination again, the Board sought input from the Air Force Legal Operations Agency, Military Justice Division, various sections of the Air Force Personnel Command, a medical opinion from Dr. Horace Carson, and a psychiatric opinion from Dr. Natalya Chernyak. A.R. 81, 336-67.

Dr. Carson recommended that the Board consider granting Mr. Bailey's requested relief. A.R. 353-58. Dr. Carson noted that there were competing possible causes of Mr. Bailey's behavior – solely alcohol related without a seizure disorder versus an

5

undiagnosed seizure disorder that was possibly precipitated by alcohol consumption. A.R. 357-58. Dr. Carson also acknowledged it was not possible to eliminate overindulgence in alcohol as a cause of his behavior in 2011 because no appropriate test was taken at the time. A.R. 357.

Dr. Chernyak opined that the facts allowed for "the possibility that an unknown medical condition could explain" Mr. Bailey's behavior on September 10, 2011. A.R. 367. However, Dr. Chernyak acknowledged that because "the case file lacks any objective clinical evidence, [Mr. Bailey's] arguments are at large just hypothetical scenarios. A.R. 366. Dr. Chernyak had recognized that Mr. Bailey did not undergo a medical evaluation immediately after his aggressive behavior. *Id.* Dr. Chernyak also recognized that Mr. Bailey's "deviant behavior displayed by the applicant [in September 2011] was most likely multifactorial in nature," with multiple factors contributing to his conduct. *Id.* In 2015, following receipt of these advisory opinions, the Board issued its third decision denying Mr. Bailey's request. A.R. 79-80.

The Board then discovered that it failed to consider Mr. Bailey's rebuttal response to various advisory opinions. *Bailey*, 145 Fed. Cl. at 459. Thus, the Board *sua sponte* elected to reconsider its third decision with Mr. Bailey's rebuttal response. *Id.* The Board issued its fourth decision denying Mr. Bailey's request. *Id.* In this fourth decision, the Board found Mr. Bailey's reliance on the opinions of Dr. Carson and Dr. Chernyak unpersuasive. *See Bailey*, 145 Fed. Cl. at 459 (citing A.R. 10).

On March 28, 2018, Mr. Bailey filed a complaint in this court challenging the Board's fourth decision and amended his complaint on April 10, 2018. The court issued

6

its decision on the parties' motions for judgment on the administrative record on October 23, 2019 and remanded the claim to the Board. Now pending before the court is the Board's fifth decision, issued on February 12, 2020, following remand. Remand Decision ("Remand Dec.") at 1 (ECF No. 32 at 2).

The Board determined after another review of the evidence that it remains "unconvinced [that] the evidence presented demonstrates an error or injustice." *Id.* at 5. The Board stated that although medical advisory opinions "are given considerable weight, credibility and deference," the Board expects that the advisory opinions "include relevant evidence based on the specifics of the case and that recommendations are supported by evidence." *Id.* Relevant here, the Board explained that the medical and psychiatric advisories that recommended granting relief to Mr. Bailey were not convincing. Indeed, the Board found them "unconvincing, uncertain and half-hearted." *Id.* The Board found that the two advisory opinions "lacked any objective clinical evidence." In addition, the Board emphasized that "the repeated uses of words such as 'possible,' 'may have been' or 'could have'" to explain how Mr. Bailey's later diagnosed seizure disorder could have been the cause of his behavior was not based on facts but was a "hypothetical scenario." *Id.* In this connection, while the Board acknowledged that Mr. Bailey has "since been diagnosed with a seizure disorder by the [Department of Veterans Affairs]," the Board explained it was "not persuaded a post-service diagnosis 18 months after the incident for which he received the Article 15 . . . is sufficient to conclude his misconduct was due to a medical condition or seizure disorder." *Id.* The Board found "the applicant's consumption of alcohol while taking prescribed medications, along with the

7

heat of the day" better explained Mr. Bailey's actions on the day in question. *Id.* The Board stated "it was [Mr. Bailey's] own poor decision to consume alcohol while taking medication" and "[b]y doing so, he exhibited poor judgment and the negative consequences of that unfortunate day were due to his own misconduct." *Id.*

Briefing on the cross motions for judgment on the administrative record in connection with the remand decision and Mr. Bailey's motion to supplement was completed on July 1, 2020. No party requested oral argument and the court has determined that oral argument is not necessary in this case.

## II.   LEGAL STANDARDS

### A.   Motion to Supplement the Administrative Record

"[L]imiting judicial review to the record actually before the agency [guards] against courts using new evidence to 'convert the arbitrary and capricious standard into effectively de novo review.'" *AugustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1331 (Fed. Cir. 2018) (quoting *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009)). "Supplementation of the record should be limited to cases in which the omission of extra-record evidence precludes effective judicial review," i.e., precludes review "consistent with the [Administrative Procedure Act ('APA')]," which may occur "if the existing record is insufficient to permit meaningful review." *Id.* (quoting *Axiom*, 564 F.3d at 1380). When granting a motion to supplement the record, the court is "required to explain why the evidence omitted from the record frustrated judicial review as to the ultimate question of whether" the agency action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Id.* at 1332.

### B. Motion for Judgment on the Administrative Record

It is "well established that judicial review of decisions of military corrections Boards is conducted under the APA." *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009). Accordingly, the court "will not disturb the decision of the Board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Prestonback v. United States*, 965 F.3d 1363, 1368 (Fed. Cir. 2020).

Under this standard the "scope of review is 'narrow': we only determine whether [the agency] examined 'the relevant data' and articulated 'a satisfactory explanation' for [its] decision." *Sharpe v. United States*, 935 F.3d 1352, 1358 (Fed. Cir. 2019) (alterations in original) (quoting *Dep't of Comm. v. New York*, 139 S. Ct. 2551, 2569 (2019)). The court "may not substitute [its] judgment for that of [the agency], but instead must confine [itself] to ensuring that [the agency] remained 'within the bounds of reasoned decisionmaking.'" *Id.* (second alteration in original) (quoting *Dep't of Comm.*, 139 S. Ct. at 2569).

## III. DISCUSSION

### A. Motion to Supplement the Administrative Record

Before turning to the merits, the court begins with Mr. Bailey's request to supplement the administrative record with a complaint he filed with the IG against the members of the Board following the Board's second decision, issued in 2015, denying Mr. Bailey's request for relief. Pl.'s Mot. for J. on the Admin. R. and Mot. to Supp. the Admin. R. ("Pl.'s Mot.") at 10-11 (ECF No. 39). The IG complaint alleges that the Board mischaracterized a note written by a doctor that spoke with Mr. Bailey soon after the

9

incident. *See* Pl.'s Mot. Att. 1. According to Mr. Bailey, the doctor's note includes a list of thoughts written "like a long run-on sentence, with different thoughts separated by a comma," and that the note states, in part: "unsure of how much alcohol after, was hot that day." Pl.'s Mot. at 10. Mr. Bailey's complaint to the IG alleges that the Board misquoted the note as instead stating that Mr. Bailey was "unsure how much alcohol *as it* was hot that day." Pl.'s Mot. Att. 1 at 2 (emphasis added). Mr. Bailey does not indicate whether this challenge was upheld in any proceedings before the IG.

Mr. Bailey argues that supplementing the record with his IG complaint "is necessary to complete meaningful judicial review" because the IG complaint shows that the Board has repeatedly mischaracterized the evidence regarding the "heat of the day" during the incident, both in 2015 and now in the challenged remand decision. Pl.'s Mot. at 10-11. Mr. Bailey further argues that supplementation is necessary to show a lack of fairness or bias because one of the members of the Board in 2015 was on the Board for the decision on remand. *Id.*

The government opposes Mr. Bailey's motion to supplement the administrative record. To the extent that Mr. Bailey alleges that it is necessary to supplement the record to show a pattern of mischaracterizing the evidence regarding the temperature, the government responds that the decision on remand is supported by substantial evidence in the record regarding the potential role that heat played in causing Mr. Bailey's conduct. *See* Def.'s Mot. for J. on the Admin. R. ("Def.'s Mot.") at 10-11 (ECF No. 40). The government also argues that the misquote at issue in the IG complaint is not present in the decision following remand. Def.'s Reply at 7-8 (ECF No. 42). The government further

responds that although the panel chair on remand was also on the panel in 2015, Mr. Bailey has not identified a violation of any Air Force regulations and Mr. Bailey has not shown that any member of the panel acted in bad faith. *Id.* at 8-9.

The Federal Circuit has held that this court may consider "extra-record" evidence in limited circumstances. *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). It is well settled that the court may only supplement the record where supplementation is needed for effective judicial review. *Axiom Res. Mgmt.*, 564 F.3d at 1380. "Judicial review is 'effective' if it is consistent with the APA." *See AugustaWestland*, 880 F.3d at 1331. Thus, the court considers whether Mr. Bailey's complaint to the IG against the Board members following the 2015 decision is needed for effective judicial review of the parties' motions for judgment on the administrative record.

Applying these standards, the court must deny Mr. Bailey's motion to supplement. Mr. Bailey's 2015 IG complaint is a separate matter from the merits of the parties' motions for judgment on the administrative record regarding the Board's decision on remand. The court remanded Mr. Bailey's case for the Board to apply the appropriate "more likely than not" standard when determining if Mr. Bailey's conduct was "beyond his control due to a then undiagnosed medical condition." *Bailey*, 145 Fed. Cl. at 464. The court further required the Board to determine how much weight to give the medical advisory opinions. *Id.* Mr. Bailey's complaint to the IG concerning the characterization of a particular doctor's note is outside the scope of the court's remand order. In addition, for the reasons discussed below, the Board did not mischaracterize the evidence regarding the weather in its remand decision. Therefore, the court has no occasion to consider a

11

pattern of mischaracterizing the evidence and supplementation of the record with a prior complaint is not necessary for effective judicial review.

To the extent that Mr. Bailey seeks to show repeated unfairness or bias, the court agrees with the government that the IG complaint is not needed for effective judicial review. Mr. Bailey has not alleged that the panel's composition following remand of this case violated a military regulation. Indeed, the court previously explained that there is nothing in the Air Force regulations that requires assignment of a request to reconsider a Board decision to an entirely new panel. *See Bailey*, 145 Fed. Cl. at 462. Regarding bias, it is well settled that members of the panel, as public officials, are presumed to discharge their duties correctly, lawfully, and in good faith. *Myers v. United States*, 50 Fed. Cl. 674, 689 (2001).

In addition, besides his own allegations regarding the mischaracterization of the doctor's note, Mr. Bailey has shown no other evidence of bias, has shown no violation of Air Force regulation, and, as discussed below, has not identified any mischaracterizations of evidence in the remand decision. Moreover, Mr. Bailey's IG complaint contains only his own allegations of error. He does not provide an IG Report addressing those allegations or any supplemental supporting evidence of bias. Mr. Bailey's IG complaint does not in and of itself demonstrate bad faith. In sum, Mr. Bailey's proposed supplement would not enhance the court's ability to evaluate the Board's rationale on remand and decide whether the remand decision is supported by substantial evidence. As such, Mr. Bailey's motion to supplement the administrative record with his 2015 IG complaint is denied.

## B.     The Board Properly Evaluated The Medical Evidence

Having concluded not to supplement the administrative record, the court turns to Mr. Bailey's arguments on the merits of the Board's decision following remand. Mr. Bailey first argues that the Board's treatment of the medical opinions shows that the Board "continues to demand certainty" in evidence and to hold Mr. Bailey to an increased evidentiary standard. Pl.'s Mot. at 8. Although Mr. Bailey concedes that the medical opinions use words like "possible," "may have been" or "could have" to describe the role of Mr. Bailey's then-undiagnosed medical condition, he contends that this language was used because of an absence of evidence at the time of the incident, rather than contradicting evidence. *Id.* Mr. Bailey asserts that the medical experts' conclusions recommending relief reflect the "available evidence at hand at the time of the incident, the medical information now known about [Mr. Bailey]" and indicate that Mr. Bailey's "behavior was, more likely than not, caused by the undiagnosed medical condition." *Id.* at 8-9. Mr. Bailey also argues that the Board's decision following remand is arbitrary and capricious because the Board mischaracterized evidence when considering the role that the "heat of the day" played in Mr. Bailey's behavior. In this connection, Mr. Bailey adds, without record or other support, that the "[w]eather for the day in questions shows a high of 81 and a temp of 73 when the incident took place." *Id.* at 9.

The government argues that the Board applied the appropriate standard and properly considered the medical experts' opinions. Def.'s Mot. at 6-7. According to the government, the "Board's language [on remand]—'unfounded,' 'conjecture', and 'did not provide substantial evidence to sustain his burden'—is markedly different than the

13

language identified in the Court's decision as reflecting the application of a heighted burden of proof." *Id.* at 6 (quoting Remand Dec. at 5). The government further argues that the Board reasonably concluded that the medical experts' opinions did not indicate that "it was more likely than not that a seizure caused Mr. Bailey's conduct." *Id.* at 9. The government explains that neither medical expert was applying a preponderance of evidence standard when evaluating the medical evidence or recommending relief and the Board reasonably rejected the recommendations because the underlying evidence was too speculative. *See* Def.'s Reply at 4-5. The government further responds that the Board's decision on remand is supported by substantial evidence and did not mischaracterize the evidence regarding the weather on the day of the incident.

      The court now reviews the Board's remand decision to determine if it applied the appropriate standard, if its review of the medical experts' opinions was rational, and if its conclusions were supported by substantial evidence. As discussed in its prior opinion, "Mr. Bailey was required to prove by a preponderance of the evidence that there was a material error or injustice in his Article 15 determination." *Bailey*, 145 Fed. Cl. at 463; *see* 32 C.F.R. § 865.4(a). The court previously found that the Board "failed to apply this standard" because it required Mr. Bailey to provide evidence which "clearly demonstrate[s] it was a seizure or medical condition" that caused his behavior and because the Board rejected the medical experts' opinions because the opinions did "not conclusively state it was a seizure which caused his misconduct." *Id.* at 458-59. For this reason, the court remanded the case to the Board to apply the preponderance of evidence

standard and determine the weight to give the medical experts' conclusions under that standard. *Id.* at 464.

As discussed above, the court's review of the Board's decision is highly deferential. The court must affirm the Board's decision unless "it is arbitrary, capricious, contrary to law or unsupported by substantial evidence." *Barnes v. United* States, 473 F.3d 1356, 1361 (Fed. Cir. 2007). Thus, even if the court were inclined to find different facts in the first instance, the court cannot reweigh the evidence. *See Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983). The court must accept the Board's view as long as the Board's conclusion contain "'such relevant evidence as a reasonable mind might accept as adequate to support" the decision.'" *Strand v. United States*, 951 F.3d 1347, 1351 (Fed. Cir. 2020) (quoting *Consol. Edison Co. of N.Y v. NLRB*, 305 U.S. 197, 229 (1938)).[2]

On remand, the Board explicitly considered whether Mr. Bailey was held to a higher standard than the preponderance of evidence and considered the weight of the medical experts' conclusions. Remand Dec. at 6. The Board concluded that Mr. Bailey did not provide "substantial evidence" to sustain his burden of proof, and the Board stated "[w]hile [Mr. Bailey] provided an abundance of information," the Board found his

---

[2] The Air Force Instructions do not indicate that any deference is due to advisory opinions like the ones obtained in this case. Air Force Instruction ("AFI"), *Air Force Board of Corrections of Military Records (AFBCMR)*, 36-2603. The Instructions only indicate that advisory opinions are one of a few enumerated items that the AFBCMR is permitted to obtain from any organization/official within the Air Force or Department of Defense. AFI 36-2603, Paragraph 4. They explain the timing for submission of the opinions, AFI 36-2603, Paragraph 4.2.2, and the contents of the opinions, AFI 36-2603, Paragraph 4.2.2.2, 4.2.2.3, and 4.2.2.5. They require that applicant be given an opportunity to review and respond to advisory opinions, AFI 36-2603, Paragraph 4.3, and establish timing for the review, AFI 36-2603, Paragraph 4.3.1 and 4.3.2.

15

arguments "suppositional, unfounded, and conjectural in nature." *Id.* The Board further found Mr. Bailey's diagnosis with a seizure disorder "18 months after the incident" insufficient "to conclude his misconduct was due to a medical condition or seizure disorder." *Id.* It was "[i]n view of the totality of the evidence" that the Board concluded that "it was [Mr. Bailey's] consumption of alcohol while taking prescribed medications, along with the heat of the day that caused him to respond aggressively and commit assault rather than an undiagnosed medical condition or seizure disorder." *Id.*

The court finds that the Board applied the appropriate burden of proof on remand. The Board's language on remand contains no indication that the Board has applied a heightened burden of proof. The Board's prior analysis which concluded that Mr. Bailey failed to "clearly demonstrate" or "prove to a medical certainty" is different from the Board's conclusion on remand that Mr. Bailey failed to provide "substantial evidence to sustain his burden of proof." *Compare* Remand Dec. at 5 *with Bailey*, 145 Fed. Cl. at 463. Whereas the requirement to clearly demonstrate or provide medical certainty is indicative of requiring Mr. Bailey to show more than a preponderance of the evidence, the failure to provide "substantial evidence to sustain his burden of proof" reflects the appropriate standard. There is no evidence that the Board on remand required Mr. Bailey to do more than provide evidence sufficient to show that it was more likely than not that a seizure disorder caused his behavior. Rather, the Board found the evidence regarding the later diagnosed seizure disorder as the cause of Mr. Bailey's behavior on the day in question speculative, and, conversely, the evidence regarding Mr. Bailey's consumption of alcohol while taking prescribed medications as the cause of his behavior substantiated.

16

The court further agrees with the government that the Board's consideration of the medical experts' opinions was reasonable and supported. The Board found these "medical and psychiatric advisories relevant" but concluded that the "recommendations for granting relief were unconvincing, uncertain and half-hearted." Remand Dec. at 5. The Board noted that the opinions "concede that since the case lacked any objective clinical evidence, [Mr. Bailey's] arguments were at large just hypothetical scenarios." *Id.* Further, although the "Psychiatric Consultant states that [Mr. Bailey's] behavior was inconsistent with someone who had five drinks over the course of a day" the Board stated that "there is no documentation to show how much and over what course of time [Mr. Bailey] consumed alcohol" while at the event. *Id.* Because medical experts repeatedly used "words such as 'possible,' 'may have been' or 'could have'" the Board "did not find the recommendations overly persuasive" and that the opinions "did not substantiate [Mr. Bailey's] contentions and were insufficient to grant relief." *Id.*

The Board's characterization of these medical experts' recommendations is supported by substantial record evidence. Dr. Carson only recommended "consideration of granting the applicant relief." A.R. 358. This recommendation was based on the existence of "competing possible causes of the applicant's aberrant behavior." A.R. 358. Indeed, Dr. Carson acknowledged that eliminating overindulgence in alcohol as a cause of Mr. Bailey's behavior was impossible because there was no "objective clinical assessment of [Mr. Bailey] at the time." A.R. 357. Similarly, although Dr. Chernyak found "sufficient evidence" to recommend relief, A.R. 367, Dr. Chernyak stated the behavior was "*most likely . . .* multifactorial in nature with multiple factors," A.R. 366

17

(emphasis added). Dr. Chernyak acknowledged that it would be "very challenging to prove or disprove" Mr. Bailey's contention given that "the case file lacks any objective clinical evidence." A.R. 366. Dr. Chernyak further stated that Mr. Bailey's "arguments are at large just hypothetical scenarios." A.R. 366. Nor do these opinions recommending relief purport to consider the preponderance of the evidence standard as applied to Mr. Bailey's claims. As such, it was not irrational for the Board to give less weight to the medical experts' recommendation for relief where it disagreed with the significance of the underling evidence.

Under the proper standard of review, this court is precluded from reweighing the evidence. *Myers*, 50 Fed. at 689 (2001) ("This Court, under the applicable standard of review, is not allowed to reweigh the evidence that the [Board] considered in reaching its decision."). If Dr. Chernyak's opinion were the only evidence before the Board, Mr. Bailey might have a strong argument. However, that was not the case. The Board knew that Mr. Bailey was taking prescription medication and made a conscious decision to consume alcohol. Even the medical experts' opinions acknowledged that alcohol could not be excluded as a contributing factor of Mr. Bailey's behavior. A.R. 78-79.

Ultimately, the burden of proof was on Mr. Bailey to establish by a preponderance of the evidence that his conduct was the result of a medical condition and not his voluntary decision to drink alcohol after taking antihistamines. It is undisputed that Mr. Bailey voluntarily consumed alcohol on the day of the incident and the medical experts could not exclude the possibility that alcohol was a factor in Mr. Bailey's behavior. It was primarily for this reason that the Board determined that Mr. Bailey had failed to

establish an alternative cause for his behavior by a preponderance of the evidence. The court finds that the Board's conclusion is supported by substantial evidence.

Finally, the court turns to Mr. Bailey's claim that the Board mischaracterized the evidence in its decision on remand. The court may set aside the Board's remand decision if the Board "offered an explanation for its decision that runs counter to the evidence before the agency." *See Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (internal quotation omitted). However, the court must accept the Board's view as long as the Board's conclusion contain "such relevant evidence as a reasonable mind might accept as adequate to support" the decision. *See Strand*, 951 F.3d at 135 (internal quotation omitted).

The court finds that the Board's statement that "consumption of alcohol, while taking prescribed medications, *along with the heat of the day*" likely caused Mr. Bailey's behavior is supported by the record. *See* Remand Dec. at 6 (emphasis added). It is undisputed that Mr. Bailey consumed alcohol and had taken prescribed medication on the day of the incident. Regarding the role that weather may have played, the record includes Mr. Bailey's own references to the impact of heat on his behavior. *See* A.R. 324 (Mr. Bailey stating that the day of the incident "had been an unusually hot day," he "had been in the sun for many hours," and recalled "feeling very hot as one of [his] last memories"); *id.* (Mr. Bailey indicating that taking "two prescription-level antihistamines daily . . . makes heat stress an even bigger threat"); A.R. 323-24 (Mr. Bailey saying he felt "suddenly disoriented and very hot"). The record further references other individuals discussing how heat contributed to Mr. Bailey's conduct. *See* A.R. 723-24 (Mr. Bailey's

physician stating that a possible heat-related injury could have been a contributing cause); A.R. 323 (Mr. Bailey stating that a Belgian police detective believed Mr. Bailey was "suffering from heat stress or a minor heat stroke").

That Mr. Bailey has now identified the temperature the day of the incident does not mean that the Board mischaracterized the evidence by relying on the record's repeated references to the potential impact of the heat on Mr. Bailey's behavior. The Board did not provide an inaccurate nor misleading characterization of evidence in the record. To the contrary, a review of the administrative record plainly supports the conclusions reached following remand. At bottom, Mr. Bailey's alleged mischaracterization amounts to a request to reweigh the evidence regarding whether heat played a role on the day of the incident. This is beyond the court's review. *See Heisig*, 719 F.2d at 1157.

## CONCLUSION

For the reasons stated above, Mr. Bailey's combined motion for judgment on the administrative record and motion to supplement the administrative record (ECF No. 39) is **DENIED**. The government's cross-motion for judgment on the administrative record (ECF No. 40) is **GRANTED**. Each party shall bear its own costs. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge